AO 245B    (Rev. 9/00) Judgment in a Criminal Case
       Sheet 1

FILED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

10 JUL -9 AM 8:31

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA



BY: _____ DEPUTY

UNITED STATES OF AMERICA

v.

JOHN WILLIAM HOWARD

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: 09CR3820-LAB

KNUT S. JOHNSON
_____
Defendant's Attorney

**REGISTRATION NO.** 17249298

☐

THE DEFENDANT:

☒ pleaded guilty to count(s)   ONE OF THE INFORMATION

☐ was found guilty on count(s) _____
after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 18 USC 2252(a)(4)(B) | Possession of Images of Minors Engaged in Sexually Explicit Conduct | 1 |

    The defendant is sentenced as provided in pages 2 through ___4___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ is ☐ are ☐ dismissed on the motion of the United States.

☒ Assessment: $100.00

☒ Fine waived    ☐ Property forfeited pursuant to order filed _____, included herein.

    IT IS ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

JULY 6, 2010
_____
Date of Imposition of Sentence

_Larry A. Burns_

_____
HON. LARRY ALAN BURNS
UNITED STATES DISTRICT JUDGE

09CR3820-LAB

AO 245B     (Rev. 9/00) Judgment in Criminal Case
            Sheet 2 — Imprisonment

Judgment — Page __2__ of __4__

DEFENDANT: JOHN WILLIAM HOWARD
CASE NUMBER: 09CR3820-LAB

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of

18 MONTHS

☐ Sentence imposed pursuant to Title 8 USC Section 1326(b).

☒ The court makes the following recommendations to the Bureau of Prisons:

PLACEMENT IN THE 500 HOUR ALCOHOL TREATMENT PROGRAM (SEE ATTACHED LETTERS).
PLACEMENT AT TERMINAL ISLAND, CA

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before _____

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

09CR3820-LAB

AO 245D  (Rev. 3/10) Judgment in a Criminal Case for Revocations
        Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___4___

DEFENDANT: JOHN WILLIAM HOWARD             ▣
CASE NUMBER: **09CR3820-LAB**

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :
5 YEARS

        The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

*For offenses committed on or after September 13, 1994:*

The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than __4__ drug tests per month during the term of supervision, unless otherwise ordered by court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of

    future substance abuse. (Check, if applicable.)

☒   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

☒   The defendant shall cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backing Elimination Act of 2000, pursuant to 18 USC sections 3563(a)(7) and 3583(d).

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works,

    or is a student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

        If this judgment imposes a fine or restitution obligation, it is a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment.

        The defendant must comply with the standard conditions that have been adopted by this court. The defendant shall also comply with any special conditions imposed.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

        **09CR3820-LAB**

AO 245B      (Rev. 9/00) Judgment in a Criminal Case
             Sheet 4 — Special Conditions

Judgment—Page ___4___ of ___4___

DEFENDANT: JOHN WILLIAM HOWARD
CASE NUMBER: **09CR3820-LAB**

# SPECIAL CONDITIONS OF SUPERVISION

[X] Submit person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

[X] Not posses any materials such as videos, magazines, photographs, computer images or other matter that depicts "sexually explicit conduct" involving children and/or adults, as defined by 18 USC 2256(2); and not patronize any place where such materials or entertainment are available.

[X] Register as a sex offender as prescribed by state and federal law.

[X] Reside in a residence approved in advance by the probation officer, and any changes in residence shall be pre-approved by the USPO.

[ ] Not reenter the United States illegally.

[ ] Not enter the Republic of Mexico without written permission of the Court or probation officer.

[X] Report all vehicles owned or operated, or in which you have an interest, to the probation officer.

[ ] Not possess any narcotic drug or controlled substance without a lawful medical prescription.

[ ] Not associate with known users of, smugglers of, or dealers in narcotics, controlled substances, or dangerous drugs in any form.

[X] Not associate with, or have any contact with any sex offenders unless in an approved treatment and/or counseling setting or unless approved by the probation officer.

[X] Consent to 3rd party disclosure to any employer, potential employer, concerning any restrictions that are imposed by the court.

[ ] Provide complete disclosure of personal and business financial records to the probation officer as requested.

[X] Not be employed in or participate in any volunteer activity that involves contact with children under the age of 18, except under circumstances approved in advance (and in writing) by the probation officer.

[ ] Seek and maintain full time employment and/or schooling or a combination of both.

[ ] Resolve all outstanding warrants within                days.

[ ] Complete             hours of community service in a program approved by the probation officer within

[ ] Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of

[X] Consent to the installation of system that will enable the probation officer to monitor computer use on any computer owned or controlled by the offender.  The offender may be required to pay for the cost of installation of the computer software.

[X] Complete a sex offender evaluation, which may include periodic psychological, physiological testing, and completion of the ABEL assessment, at the direction of the court or probation officer; and that the defendant participate and successfully complete an approved state-certified sex offender treatment program, including compliance with all lifestyle restrictions and treatment requirements of the program.

The offender will allow reciprocal release of information between the probation officer and the treatment provider. The offender may also be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

**09CR3820-LAB**

# PRISON CONSULTING GROUP LLC

July 3, 2010

Mr. Knut S. Johnson
1010 2nd Avenue
Suite 1850
San Diego, California 92101
knut@knutjohnson.com

Re: John Howard

Dear Mr. Johnson:

After reviewing John's Pre-Sentencing Investigation Report and through many one on one telephone discussions with him, I believe the following judicial recommendations would be appropriate for John. We have prepared these in hopes that they may be beneficial to John and may assist you. Please call if you have any questions.

## 500-Hour Residential Drug Abuse Program

John's PSR states, *"HOWARD reported a rather remote history of using illicit drugs. He used cocaine on one occasion at the age of 22, and smoked marijuana approximately six times in his life, most recently over 10 years ago. None of these substances became a problem. However HOWARD noted that about one year prior to August 2008, his wife asked him to quit drinking around the children as it changed his personality. The defendant also noticed that it was becoming a problem as he thought he "needed to drink to have fun." After August 2008 HOWARD significantly reduced his alcohol intake. Subsequent to his arrest and release on pretrial supervision, the defendant ceased imbibing altogether without any specific alcohol-focused treatment."*

*"According to pretrial records, the defendant reported drinking alcohol on a social basis. He admitted having tried cocaine, hallucinogens, and prescription drugs, each on only one occasion, while in his 20's. The defendant also said he smoked marijuana about once every five years, most recently in 2006."*

*"Mrs. Howard stated that, to her knowledge, her husband has never used illegal drugs. Alcohol was an issue for him in the past; not because he was abusive or angry, but that it "did not help him." She asked him to cease imbibing about 18 months ago, and he has complied without much difficulty. He has never participated in alcohol-specific treatment."*

In our numerous recent discussions, John shared with me the fact that some of the information in the PSR in the Substance Abuse Section is incorrect. It must be corrected in order for John to even have a chance at the 500-Hour Residential Drug Abuse program, i.e., RDAP. As

11726 106TH Court
Largo, Florida 33778

Phone: (727) 678-4400
Fax: (727) 683-9985

Email:info@prisonconsultinggroup.com
Website: www.prisonconsultinggroup.com

# PRISON CONSULTING GROUP LLC

you know, one requirement of the Bureau of Prisons (BOP) for admission into the RDAP program is that the defendant must have consumed alcohol or be diagnosed with alcohol use/abuse in the 12 month period immediately prior to arrest/incarceration.

On March 16, 2009 new rules affecting the RDAP program came into being. The new BOP rules say that eligible prisoners must be able to show that they had a substance use disorder, supported by documentation, within a 12-month period before the prisoner was _arrested_ for his current offense. See Program Statement # 5330.11, Chap. 2, p. 12 (Mar. 16, 2009). This is a change to previous rules and addresses a problem that had previously been litigated in the courts. Previously, the BOP had excluded people from the RDAP program for being in **"sustained remission"**[1] based on the date the person was _incarcerated_, not the date the person was _"arrested."_ This led to a court split. Dating **"sustained remission"** from the date of incarceration becomes problematic whenever a person is arrested, is released pending trial, and is required by a court order to stay sober during that time. If the person obeyed the court and stayed clean for at least a year before going to prison, some courts held that the BOP could later use this sobriety as a reason for preventing that person from enrolling in the RDAP. Other courts ruled that, in these circumstances, the BOP could not bar a person from the RDAP, particularly because past versions of the BOP's own regulations and program statements regarding RDAP eligibility did not explicitly list **"sustained remission"** as a ground for excluding someone from the RDAP.

We do not know how courts will rule on sustained remission now that the BOP has mentioned it explicitly in the new rules that went into effect on March 16, 2009. Now that the BOP measures sustained remission from the date of _arrest_, not the date a person goes to prison, fewer people may be excluded from the RDAP because they are found to be in **sustained remission**.

In John's case, he stated to me, _"I cut down my drinking significantly after the time of the raid (Aug 2008), but was still binge drinking occasionally until arrested (September 2009). After that I stopped altogether based on house arrest and fear that drinking would get me in further trouble with law enforcement."_ If at all possible, the PSR needs to be amended to include these facts. John continued to binge drink after the raid in 2008 up until he was placed on house arrest in September of 2009. In essence, John was in _"sustained remission"_ because he was fearful of being remanded into

---

[1] According to the DSM- IV, a person is in "sustained remission" if he has not used drugs or alcohol for 12 consecutive months prior to his arrest. One exception to this rule is when the person is in a "controlled environment" during that 12-month period (i.e., "closely supervised and substance-free jails, therapeutic communities, or locked hospital units."). DSM-IV AT 175-83. If a person is in a "controlled environment" during the 12-month period before his arrest, and does not use drugs during that 12-month period, the DSM-MD IV says the person is not in "sustained remission."

11726 106TH Court                    Phone: (727) 678-4400          Email:info@prisonconsultinggroup.com
Largo, Florida 33778                  Fax: (727) 683-9985           Website: www.prisonconsultinggroup.com

# PRISON CONSULTING GROUP LLC

federal custody if he drank while on house arrest. John also stated to me, *"The PSR states that my wife asked me about a year before the raid to cut down on drinking, but I did not do so until after the raid."* He did cut down on his drinking after the raid, but did not stop. His binge drinking continued as he stated.

Another problem that John faces is when he is released from federal prison. Both he and his wife have concerns that unless John is treated in a comprehensive substance abuse program, such as the 500-Hour Residential Drug Abuse Program, he will revert back to his alcoholic nature.

Katherine Raleigh DiFrancesca, Ph.D. is a psychologist who did a psychological evaluation on Mr. Howard. In that evaluation she noted the following:

- He was disconnected from his wife and unable to resolve the conflict. **"I wanted to be with my friends partying."**

- He and a buddy developed unsavory "friendships". They would go out to dinner with the girls and **they were drinking a lot.**

- **"When I drank a lot**, I did not perform sexually."

- The start of his junior year he was in a fraternity at UCLA and it was "**a drunk-a-thon for two years." Alcohol became associated with partying. He liked being out of control. "It let me break through that unwillingness to be vulnerable."** In graduate school he did not generally drink to excess but there was some binging with friends. In San Diego when he first went to work, there would be **Friday night happy hours with co-workers** but he controlled the amount of alcohol he used. After, he joined the Building Industry Association; he began drinking with friends and made friends with a man who would suggest going to unsavory places after Building Association events. **His drinking and going to unsavory places increased. Two or three years ago he started drinking more at home. "When my wife asked me to leave she said "'this is a dry house now and if you want to see the kids, no drinking first.'"**

Dr. DiFrancesca diagnosed Mr. Howard as **"Alcohol abuse, in early remission."**

John, since August of 2008, has also been treated by Dr. John J. Perna PhD., a clinical Psychologist in San Diego. In the attached letter Dr. Perna speaks of John's alcohol abuse and dependence and his genetic predisposition to alcohol abuse. Dr. Perna states that John has been involved in excessive alcohol consumption in the years before the law enforcement action and continues to be on a "slippery slope" as to his alcohol addiction. Dr. Perna also

# PRISON CONSULTING GROUP LLC

recommends that John be in an alcohol treatment program, a comprehensive program such as the 500-Hour Residential Drug Abuse Program.

There are nine criteria in the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM-IV) that the Bureau of Prisons uses for a diagnosis of substance abuse. The DSM-IV states that at least **three** of the following nine criteria must be met in order to qualify as having a substance abuse disorder and be eligible for the 500-Hour Residential Drug Abuse program. The criteria are listed below.

- Using a substance in larger amounts or for longer periods than originally intended. **Mr. Howard answered,** *"I have often gone out with friends to have a drink or two. I end up having several, and many times after they had left the bar I would stay and continue to drink."*

- Inability to reduce or control use of a substance, even after recognizing its harmful effects. **Mr. Howard answered,** *"I would be at work in the afternoon some days, just trying to get through the day so I could get to the bar or home for a drink. I found myself thinking at the start of the week which nights I would be able to get out and get drunk that week."*

- Spending a great deal of time acquiring, using, or recovering from a substance. **Mr. Howard stated,** *"There have been many nights when I have just sat around drinking. There have been many nights when I have gone home after work, poured a very strong drink and fallen asleep early."*

- Failing to fulfill obligations due to substance effects. **Mr. Howard answered by saying,** *"I have had to cancel early morning business meetings or miss networking breakfasts because I was too hung over."*

- Reducing or eliminating activities at work or play because of using a substance. **Mr. Howard answered,** *"Yes, I have cancelled sports dates with friends because I was too hung over."*

- Suffering from a variety of social, psychological, or physical problems due to continued use. **Mr. Howard confided,** *"Yes, Blood pressure shot up to 170/120 when I was drinking heavily. My family relationships suffered; my wife said my personality really changed when I was drinking. The lowering of inhibitions from alcohol use contributed to my deviant behavior, and I was depressed and hopeless much of the time."*

11726 106TH Court                     Phone: (727) 678-4400        Email:info@prisonconsultinggroup.com
Largo, Florida 33778                  Fax: (727) 683-9985          Website: www.prisonconsultinggroup.com

# PRISON CONSULTING GROUP LLC

- An increasing tolerance of the substance used. **Mr. Howard stated,** *"Yes, I got to a point where I would drink 5-6 double vodkas in an evening and still carry on a good conversation and drive home. A year before if I did that I would not even be able to walk."*

- Experiencing withdrawal symptoms after reducing or eliminating substance abuse. Mr. **Howard stated,** *"Not much, other than wanting another drink. I don't know if this was withdrawal or just emotional desire."*

- Taking a substance after experiencing withdrawal symptoms. **Mr. Howard started,** *"Yes, after the hangover headaches went away and I forgot how bad I felt, I would drink again."*

John certainly meets more than three of the above stated criteria. He not only meets the eligibility requirements but he certainly needs and requires the 500-Hour Residential Drug Abuse Treatment program.

### Designation: FCI Terminal Island, California

The Federal Correctional Institution at Terminal Island in California has approximately 1,043 male inmates as of July 3, 2010 and is a low security Federal Correctional Institution. It does have the 500-Hour Residential Drug Abuse Program. It is also the closest low security men's facility to John's family and the easiest for his wife, children, family, and in-laws to travel to. It is approximately 113 miles from John's family and friends. This placement would enable John to have the substance abuse treatment he needs and also be close to his family and would allow him to maintain family ties with his wife Julie and their two children, William (age 13) and Olivia (age 10).

These are the two judicial recommendations that would be appropriate for John and which should be requested at the time of sentencing.

Sincerely,



Robin Stover, Director
Prison Consulting Group LLC

07/03/2010  07:33    0000000000                                    PAGE  01
Jul 03 10  Case 3:09-cr-03820-LAB  Document 44-2   Filed 07/04/02  Pages 1 of 2          p.3

**JOHN J. PERNA, Ph.D., CLINICAL PSYCHOLOGY, PSY 5069**
PSYCHOLOGICAL PROFESSIONALS INCORPORATED
5190 GOVERNOR DRIVE, SUITE 101      SAN DIEGO, CALIFORNIA 92122
(858) 558-3036

July 3, 2010

Robin Stover
Prison Consulting, LLC
11726 106th Court
Largo, FL 33778

RE:  Howard, John William
DOB: 07-12-1958

Dear Mr. Stover,

Mr. Howard, a current patient, recently informed me that he enlisted your services to assist him in obtaining important Psychological Treatment, specifically treatment for Alcohol Dependence during the period of time that he is incarcerated. I am in full support of this endeavor.

Mr. Howard came to my office on August 14, 2008, following a law enforcement action at his residence. As you are no doubt aware, he has pled guilty to possession of child pornography. A very significant contributor to Mr. Howard's poor judgement and choices has been his alcohol abuse and dependence. Mr. Howard was raised in a family in which alcoholism was a significant component. Given the genetic predisposition for alcohol abuse, his unsatisfactory marriage, his poor choices in friends and activities, it is not surprising that he developed an alcohol dependence.

During the early portion of his psychotherapy we directly addressed this issue. He had been involved in excessive alcohol consumption in the years before the law enforcement action noted above. Given the urgency of his situation, he initially decreased his use of alcohol, but remained in denial regarding the severity of his addiction. While he did have periods of abstinence, he continued to have moments that resulted in binge drinking. While the focus of our work was the redevelopment of his longstanding personal values, we also focused on his social participation in

the use of alcohol as it has been and continued to be a "slippery slope" into inappropriate choices and behavior with his "drinking friends". Eventually, Mr. Howard acknowledged the impact of alcohol on his life and he began to significantly curtail his contact with the "friends". It was not until his arrest, however, that he stopped the use of alcohol completely. Mr. Howard's belief in his high level of native intelligence undermined his awareness that he did not, in fact, have control over his drinking. However, the fact that his bond was attached to his and his family's house, and his consequent concern for his family's future, influenced him to cease drinking alcohol. As a psychologist with fairly extensive experience in substance abuse, this motivation was not the preferred choice, but it has been helpful to assist him to understand the negative effects his alcoholism has had on himself and his family.

Mr. Howard, if at all possible, should be involved in an alcohol treatment program while he is incarcerated, and he should continue in a program when he is released.


*John J. Perna, Ph.D.*

John J. Perna, Ph.D.
Clinical Psychology